**In the Interest of Robert Brian ELLEBRACHT and Jeremy Ray Ellebracht.**

No. 06–99–00153–CV.

Court of Appeals of Texas, Texarkana.

Submitted Sept. 14, 2000.

Decided Oct. 5, 2000.

Michael P. Kopech, Law Offices of Michael P. Kopech, Daingerfield, for Gerald and Wanda Atwood.

Diane M. MacFarlane, Longview, for Robert Ellebracht.

Laurie Mitchell, West, pro se.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

BEN Z. GRANT, Justice.

Wanda and Gerald Atwood, maternal grandparents of Robert Brian Ellebracht and Jeremy Ray Ellebracht, challenge the trial court's order awarding custody of the boys to their father, Robert Ellebracht.

The Atwoods also challenge the validity of a nunc pro tunc order issued by the trial court.

This case arose from litigation originating with a 1990 Petition for Divorce. Laurie Mitchell and Charles Mitchell separated when their son, Jason Willis Mitchell, was one year old. Charles Mitchell filed for divorce in Morris County on January 18, 1990; however, the Decree of Divorce was not rendered until August 23, 1999. While separated from her husband and before the divorce was finalized, Laurie Mitchell had two sons by Robert Ellebracht: Robert Brian Ellebracht and Jeremy Ray Ellebracht. After the youngest boy was born, Laurie Mitchell's relationship with Robert Ellebracht ended. At that time, Laurie's parents, Wanda and Gerald Atwood, took possession of all three boys. Laurie Mitchell's visitation rights were limited by the court due to her noncompliance with temporary custody orders.[1] Robert Ellebracht remained active in the boys' lives even though he questioned whether the Ellebracht boys were his biological sons.

On November 17, 1995, the 40th Judicial District Court of Ellis County, Texas, ordered that Robert Ellebracht submit to a paternity test. In response to that order, Robert Ellebracht filed Respondent's First Amended Original Answer and Cross Petition in Suit Affecting the Parent Child Relationship denying that he was the father of Robert and Jeremy Ellebracht and, in the alternative, seeking custody of the boys in the event that he was the father. The test revealed that Robert Ellebracht was the father of both Ellebracht boys. In September of 1996, the pending case was transferred to the 76th Judicial District Court in Morris County, Texas. On November 6, 1997, the trial court consolidated the Mitchell divorce and the Ellebracht suit and awarded custody of the Ellebracht boys to their father. The signed custody order was rendered on January 7, 1998.

The Atwoods filed their Motion for New Trial on February 5, 1998. The motion was overruled by operation of law on March 22, 1998, seventy-five days after the judgment was signed. The trial court entered an order on April 3, 1998, granting the Motion for New Trial "in its entirety" during its plenary power. On August 23, 1999, nearly seventeen months later, the trial court rendered a nunc pro tunc order. This order vacates the new trial that had been granted as to the Ellebracht boys.

The Atwoods appeal the Nunc Pro Tunc Order on Motion for New Trial contending that it constituted the correction of a judicial error rendered outside the court's plenary power and, as such, is void. The Atwoods also contend that the trial court erred by granting custody of the Ellebracht boys to their father when no pleading seeking custody existed, that the trial court's order awarding custody of the Ellebracht boys to their father was based on factually and legally insufficient evidence, and that the trial court erred in assuming that the Texas Family Code required Robert Ellebracht be given primary custody of the Ellebracht boys.

■ A court retains control over a case and can vacate, modify, or reform a judgment during its plenary power. TEX. R.CIV.P. 329b. Even after a court's plenary power expires, it can correct a clerical error in a judgment by issuing a nunc pro tunc order. TEX.R.CIV.P. 329b(f). If, however, a court attempts to correct a judicial error by signing a nunc pro tunc order after the expiration of its plenary power, that judgment is void. *See Dikeman v. Snell,* 490 S.W.2d 183, 186 (Tex.1973).

■ When a motion for new trial is filed, a trial court's plenary power extends seventy-five days from the date the judgment was signed. *Fruehauf Corp. v. Carrillo,* 848 S.W.2d 83, 84 (Tex.1993). A trial court retains plenary power to grant a new trial or vacate, modify, or reform a judgment for thirty days after a properly filed

---

1. Laurie Mitchell died before this appeal was filed.

motion for new trial is overruled. TEX. R.CIV.P. 329b(e). When a trial court grants a party's motion for new trial, it cannot vacate the order outside of its plenary power. *Porter v.. Vick,* 888 S.W.2d 789, 790 (Tex.1994).

Following the January 7, 1998, order awarding custody of the Ellebracht boys to their father, the Atwoods filed a Motion for New Trial with the trial court. That motion was overruled by operation of law on March 22, 1998, seventy-five days after the judgment was signed. TEX.R.CIV.P. 329b(c). In accordance with TEX.R.CIV.P . 329b(e), the trial court entered an order granting the Motion for New Trial before its plenary power expired. On August 23, 1999, nearly seventeen months later, the court rendered a nunc pro tunc order limiting the issues to be retried and effectively "ungranting" the April 3, 1998, order granting a new trial. This was done outside the court's plenary power which, pursuant to Rule 329b(e), expired on April 21, 1998.

Because the court clearly acted outside of its plenary power, the central issue before this Court is whether the nunc pro tunc order was truly a nunc pro tunc order, as described in TEX.R.CIV.P. 316, or if the order actually reflected a substantive change in the judgment by the court.

■ A nunc pro tunc order allows the trial court to correct clerical errors in the judgment after the court's plenary power has expired. *West Texas State Bank v. Gen. Res. Mgmt. Corp.,* 723 S.W.2d 304, 306 (Tex.App.—Austin 1987, writ ref'd n.r.e.). If the court attempts to correct a judicial mistake by signing a judgment nunc pro tunc after the expiration of its plenary power, that judgment is void. *See Dikeman,* 490 S.W.2d at 186. "[A]fter a judgment has become final, the trial court may only correct clerical errors by nunc pro tunc judgment and may not correct judicial errors. The salient distinction between 'clerical' and 'judicial' errors lies in the exercise of the judgmental offices of the court. A clerical error is one which

does not result from judicial reasoning or determination." *Andrews v. Koch,* 702 S.W.2d 584, 585 (Tex.1986). A judicial error occurs in the rendering as opposed to the entering of a judgment. *Escobar v. Escobar,* 711 S.W.2d 230, 231 (Tex.1986).

■ Reinstating a judgment against a party is a correction of a judicial, not a clerical, error. *See C & S Truck Line v. Valentine,* 640 S.W.2d 341 (Tex.App.—Beaumont 1982, no writ). Some typical clerical changes that have been upheld as valid nunc pro tunc orders are corrections of the date of judgment, *Nolan v. Bettis,* 562 S.W.2d 520, 522 (Tex.Civ.App.—Austin 1978, no writ), correction of a party's name, *Carlyle Real Estate Ltd. Partnership–X v. Leibman,* 782 S.W.2d 230 (Tex. App.—Houston [1st Dist.] 1989, no writ), and correction of a numerical error, *Escobar,* 711 S.W.2d at 230.

■ In their Motion for New Trial, the Atwoods requested a new trial on the grounds that the court should not have conducted a final hearing on the custody of the Ellebracht boys, that the trial court should not have awarded custody of the boys to their father, and that the trial court should not have awarded Robert Ellebracht any possessory rights to Jason Mitchell, the oldest boy. The court granted the Atwoods' motion "in its entirety" on April 3, 1998. At the August 23, 1999, review hearing, the court agreed to enter a nunc pro tunc order limiting the new trial to only issues concerning the oldest child, Jason Mitchell. The nunc pro tunc order effectively ungranted the Atwoods' new trial on the custody of the Ellebracht boys and reinstated the custody order entered on January 6, 1998.

Robert Ellebracht contends that the nunc pro tunc order reflects what the trial judge actually intended to do in the order granting a new trial; however, he points to no evidence in the record to show the court's intention when the order granting the new trial was signed. There is no record of the hearing on the Motion for

New Trial. This Court has reviewed the record for any clear indication of the trial court's intention and has found none. At the August 1999 hearing, the court and counsel discussed the nunc pro tunc order and its effect, but no clear purpose can be gleaned from the record. On its face, the nunc pro tunc order takes away the Atwoods' right to relitigate the custody of the Ellebracht boys. This is a substantive change, not merely a clerical change, and the record contains no clear language indicating that the court intended otherwise.

Furthermore, the record suggests that the trial court intended to change the decision with regard to the custody of the Ellebracht boys when the court stated,

> I'm going to make a finding that as to the two younger children that that issue is dead as of this point without a motion for—without a Motion to Modify the Two Younger Ones.

> As to Jason, that is the only issue that would still be open at this point.

We have concluded that vacating the order granting a new trial was a judicial correction and is therefore not a proper nunc pro tunc order. The rules articulating a court's plenary power limit the time a judge is allowed to modify, correct, or change a judgment. The purpose of this plenary power is to give litigants a final judgment that can be relied on. To allow a court to change its mind at any point in time and render a new judgment simply by labeling it a nunc pro tunc order would defeat the purpose of the plenary power rules.

The Nunc Pro Tunc Order on Motion for New Trial is void, leaving the order granting the Motion for New Trial in effect. The case is remanded to the trial court for proceedings in accordance with this opinion.